# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| BILLY CEPERO, | |
| Plaintiff, | Case No. 2:11-cv-01421-GMN-GWF |
| vs. | **ORDER** |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, | Screening of Amended Complaint (#26) |
| Defendants. | Motion for Appointment of Counsel (#25) |

This matter comes before the Court on the screening of Plaintiff's Amended Complaint (#26), filed on February 28, 2012, and Plaintiff's Motion for Appointment of Counsel (#25), filed on February 28, 2012. On November 7, 2011, the Court entered a Report and Recommendation (#9), dismissing Count IV and granting Plaintiff leave to amend his complaint as to the other counts. On February 28, 2012, Plaintiff filed his Amended Complaint (#26), alleging five causes of action. The Court will now screen Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915.

**I.     Count I - Excessive Use of Force**

In Count I, Plaintiff brings a claim for excessive use of force. All claims that law enforcement officers used excessive force, either deadly or non-deadly, in the course of an arrest, investigatory stop, or other seizure of a citizen are to be analyzed under the Fourth Amendment and its standard of objective reasonableness. *See Long v. City and County of Honolulu*, 511 F.3d 901, 906 (9th Cir.2007); *see also Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989). The pertinent question in an excessive force case is whether the use of force was "objectively reasonable in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397; *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir.2007). The

analysis of whether a specific use of force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Graham*, 490 U.S. at 396; *Blankenhorn*, 485 F.3d at 477; *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir.2007).

"We first assess the quantum of force used to arrest [the plaintiff]" and then "measure the governmental interests at stake by evaluating a range of factors." *Davis*, 478 F.3d at 1054. Factors that are considered in assessing the government interests at stake include, but are not limited to, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *Blankenhorn*, 485 F.3d at 477; *Davis*, 478 F.3d at 1054. Further, where it is or should be apparent that an individual is emotionally or mentally unstable, that is a factor that must be considered in determining the reasonableness of the force employed. *See Drummond*, 343 F.3d at 1058. "In some cases ..., the availability of alternative methods of capturing or subduing a suspect may be a factor to consider." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir.2005). However, police officers "are not required to use the least intrusive degree of force possible" as long as the force actually used was reasonable. *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir.1994); *see Gregory v. County of Maui*, 523 F.3d 1103, 1107 (9th Cir.2008).

Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *Drummond*, 343 F.3d at 1058. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97; *Drummond*, 343 F.3d at 1058. Since "[n]ot every push or shove, even if it may seem unnecessary in the peace of the judge's chambers, ... violates the Fourth Amendment," *Graham*, 490 U.S. at 396, "[n]either tackling nor punching a suspect to make an arrest necessarily constitutes excessive force." *Blankenhorn*, 485 F.3d at 477. "Force is excessive when it is greater than is reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir.2002). When the circumstances show that there is no need for force, any force used is constitutionally unreasonable. *See*

*Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir.2001); *see also Motley v. Parks*, 432 F.3d 1072, 1089 (9th Cir.2005).

In screening Plaintiff's claim of excessive force, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir.1996). Plaintiff alleges that he was lying face down on the floor in his boxer shorts with no weapon when the Defendants arrived at his house. Upon locating Plaintiff, Defendants kicked, punched, and hit him with a canister. Defendant claims that he never resisted or tried to run from the officers, but was simply lying on the floor, face-down during the entire incident.

Considering all factual allegations in the light most favorable to the plaintiff, the Court finds that Plaintiff has stated a viable claim for excessive use of force under the Fourth Amendment. A reasonable officer at the time of the arrest would recognize that repeatedly punching and kicking a suspect who was not resisting arrest while using force that resulted in lacerations requiring stitches, a dislocated nose and a broken shoulder constitutes excessive force for effecting an arrest. Therefore, the Court finds that Plaintiff has stated a viable claim for excessive force and will allow Plaintiff to proceed with this claim. At this time, the Court finds it reasonable to allow Plaintiff to pursue this claim against all the named-Defendants except Defendants Sheriff Douglas Gillespie and Bill Cassell. Considering the circumstances alleged, it is understandable that Plaintiff cannot identify the officers responsible for the alleged conduct. As more facts come out during discovery, the individuals involved will become known, and Defendants can move to dismiss all other named-Defendants.

**II.     Count II - Assault and Battery**

Plaintiff alleges a claim of assault and battery against Defendants. Assault and battery are causes of action under state law and § 1983 does not provide for such. *See Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007). A federal court however may hear state claims that are part of the "same case or controversy" as a claim arising under federal law. 28 U.S.C. § 1367(a). This court therefore can exercise supplemental jurisdiction over Plaintiff's state law claims because they arise from the same "nucleus of operative fact"-namely, Plaintiff's arrest. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

1      "To establish an assault claim, a plaintiff must show that the actor (1) intended to cause harmful
2 or offensive physical contact, and (2) the victim was put in apprehension of such contact." Restatement
3 (Second) of Torts § 21 (1965); *Burns v. Mayer*, 175 F.Supp.2d 1259, 1270 (D.Nev.2001). "Words do
4 not make the actor liable for assault unless together with other acts or circumstances they put the other
5 in reasonable apprehension of an imminent harmful or offensive contact with his person." Restatement
6 (Second) Torts § 31; *see also Anstedt v. State*, 509 P.2d 968, 969 (1973) ( "Mere menace is not enough.
7 There must be an effort to carry the intention into execution."). There must also be a threat of
8 imminent harm. *See Brower v. Ackerley*, 943 P.2d 1141, 1145 (Wash.Ct.App.1997); *see also*
9 Restatement (Second) Torts § 29, comment b ("The apprehension created must be one of imminent
10 contact, as distinguished from any contact in the future.... It means ... that there will be no significant
11 delay."). There is no liability when an act is "a step toward the infliction of future contact."
12 Restatement (Second) Torts § 29(2). Additionally, "[t]o establish a battery claim, a plaintiff must show
13 that the actor (1) intended to cause harmful or offensive contact, and (2) offensive contact occurred."
14 Restatement (Second) of Torts §§ 13, 18 (1965); *Burns*, 175 F.Supp.2d at 1270.
15      Here, Plaintiff alleges that several of the Defendants made threats to his mother and other family
16 and friends for approximately a month prior to his arrest stating that they would shoot him on site if he
17 ran from them. These statements do not constitute an assault because Plaintiff pleads no facts to
18 support that these words put him in imminent apprehension of physical harm. These words were not
19 spoken to the Plaintiff, but rather his family and friends, and further, these threats occurred within the
20 month prior to Plaintiff's arrest, negating any alleged apprehension of imminent harm. Plaintiff
21 therefore will not be allowed to allege assault based on threats made to his family and friends.
22      Plaintiff also alleges a claim of assault and battery based on Defendants' conduct at the time of
23 his arrest. Plaintiff claims that Defendants repeatedly kicked and punched him causing several injuries.
24 Taking these facts as true and construing them in the light most favorable to Plaintiff, the Court finds
25 that Plaintiff has pled sufficient facts to bring a claim for assault and battery only concerning the facts
26 and circumstances surrounding Plaintiff's arrest. The Court will allow Plaintiff to pursue this claim
27 against all named-Defendants except Sheriff Douglas Gillespie and Bill Cassell.
28 . . .

### III.  Count III - Intentional Infliction of Emotional Distress

An intentional infliction of emotional distress (IIED) claim requires that: (1) the defendant engaged in extreme and outrageous conduct with the intent of causing emotional distress or with reckless disregard for the plaintiff's emotional distress; (2) the plaintiff suffered severe or extreme emotional distress as a result; and (3) the defendant's actions were the proximate cause of plaintiff's emotional distress. *Jordan v. State*, 110 P.3d 30, 52 (2005).  The test of whether particular acts are sufficiently outrageous is objective, not subjective. *See Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (1998).  A claim for intentional infliction of emotional distress operates on a continuum: the less extreme the outrage, the greater the need for evidence of physical injury or illness from the emotional distress. *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (1993) (quoting *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (1983)).  At the ends of this spectrum, conduct is extreme or outrageous if it is atrocious, beyond all possible bounds of decency, and utterly intolerable, *Churchill v. Barach*, 863 F.Supp. 1266, 1275 (D.Nev.1994), and emotional distress is severe if it is so intense that no reasonable person could be expected to endure it.  *Alam v. Reno Hilton Corp.*, 819 F.Supp. 905, 911 (D.Nev.1993).

Here, Plaintiff alleges that the Defendants acted with deliberate indifference and with the intent to cause and inflict emotional distress.  Plaintiff alleges Defendants repeatedly and continuously threatened him and his friends and family with physical harm.  Plaintiff claims that they used steady harassment and even promised to shoot him if he did not turn himself in.  Plaintiff claims that these actions caused him severe emotional distress.  Taking all these allegations as true and viewing them in the light most favorable to the Plaintiff, the Court finds that Plaintiff has plead facts sufficient to support a claim for intentional infliction of emotional distress.

### IV.  Count IV - Negligence

Liability under 42 U.S.C. § 1983 arises only upon a showing of personal participation by the defendant in the alleged constitutional deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Id.* Additionally, it is well established that there is no respondent superior liability under § 1983. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir.1984).  Absent an official's

participation or direction in the violation of a plaintiff's constitutional rights, he cannot be held personally liable in an individual-capacity suit under section 1983. *Ybarra*, 723 F.2d at 680.  Thus, "to succeed on a cause of action under section 1983, the plaintiff must prove the defendant[s] [were] the cause in fact and the proximate cause of plaintiff's injuries." *Kraft v. Jackson*, 669 F.Supp. 333, 339 (D.Nev. 1987), aff'd, 872 F.2d 862 (9th Cir.1989).

Plaintiff alleges that Defendant Sergeant Leveque supervised and directed the action of the officers.  Plaintiff claims that Sgt. Leveque was personally involved and at the location where Plaintiff was arrested.  Plaintiff alleges that Sgt. Leveque orchestrated and knowingly and willingly allowed the actions that form the basis of this complaint.  Plaintiff claims that Sgt. Leveque was the field supervisor in charge and therefore should be held liable for negligence.  Taking all these allegations as true and viewing them in the light most favorable to the Plaintiff, it appears Sgt. Leveque either participated in or directed the other officers' conduct during Plaintiff's arrest.   The Court therefore finds that Plaintiff has stated facts sufficient to support a claim of negligence against Sgt. Leveque.

Plaintiff also alleges that Lieutenant Flynn should be held liable under the theory of negligence.  Plaintiff claims that Lt. Flynn was the division chief in charge of the negotiations on August 26, 2009.  Plaintiff alleges that he directed all the strategical advances of SWAT as he was negotiating with Plaintiff.  Plaintiff claims that Lt. Flynn told him that if the SWAT members had to go in, Plaintiff would get hurt.  Again, taking all these allegations as true and viewing them in the light most favorable to the Plaintiff, it appears Lt. Flynn either participated in or directed the other officers' conduct during Plaintiff's arrest.   The Court therefore finds that Plaintiff has stated facts sufficient to support a claim of negligence against Lt. Flynn.

Plaintiff further alleges that Sheriff Gillespie was the sheriff in charge of the Las Vegas Metropolitan Police Department.  Plaintiff claims that Sheriff Gillespie did not attempt to redress the situation or discipline any of the officers involved in Plaintiff's arrest and therefore, Plaintiff argues that Sheriff Gillespie should be responsible to Plaintiff for his grief and pain.  Plaintiff failed to allege any facts that support that Sheriff Gillespie either participated in or directed the officer's conduct.  The Court therefore finds that Plaintiff has failed to allege sufficient facts to support a negligence claim against Sheriff Gillespie.

### V. Count V - Defamation

Plaintiff alleges a claim for defamation against Bill Cassell. "A defamation claim requires demonstrating (1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev.2005). Truth, however, is a complete defense to defamation. *See Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 88 (Nev.2002). Plaintiff alleges that Bill Cassell as spokesperson for the LVMPD made false statements to the media regarding the circumstances of his arrest in an attempt to justify the police department's actions. Plaintiff fails to provide specific facts concerning the alleged false statement and further fails to allege any damages as a result of that statement. The Court therefore finds that Plaintiff has failed to plead facts sufficient to support a claim of defamation against Mr. Cassell. Plaintiff's defamation claim is therefore dismissed without prejudice.

In the interest of moving this case forward, the Court will order Plaintiff's complaint to be filed and service of the complaint and summons to the Attorney General's office. If Plaintiff wishes to further amend his complaint to add a valid claim for defamation, he may file a motion to amend his complaint, requesting such relief.

Plaintiff further requests that the Court appoint him counsel because he is unable to afford counsel, he is in administrative segregation and does not have direct access to the law library and because he has very limited knowledge of the law. There is no constitutional right to the appointment of counsel in civil cases. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 269 (9th Cir. 1982). A court may only designate counsel pursuant to 28 U.S.C. § 1915(d) in exceptional circumstances. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). In determining whether counsel should be appointed, the Court has discretion to consider four relevant factors: (1) the plaintiff's financial resources; (2) the efforts made by the plaintiff to secure counsel; (3) the meritoriousness of the plaintiff's claim; and (4) the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved. *Ivey*, 673 F.2d at 269; *Wilborn*, 789 F.2d at 1331. Plaintiff has not presented sufficient evidence to persuade this Court to appoint counsel to represent him. Accordingly,

**IT IS HEREBY ORDERED** that the clerk shall file Plaintiff's Complaint (#26).

**IT IS FURTHER ORDERED** that the clerk shall add Catherine Cortez Masto, Attorney General for the State of Nevada as counsel for Defendants. The Clerk shall electronically serve Defendants with a copy of this order and the complaint. The Attorney General shall advise the Court within twenty (20) days from the date of service whether service for process for the named Defendants is accepted. If the Attorney General accepts service of process for any of the Defendants, such Defendant shall file and serve an answer or other response to the complaint within thirty (30) days of the date of the notice of acceptance of service. If service cannot be accepted for any of the named Defendants, then Plaintiff will need to file a motion identifying the unserved Defendant(s), requesting the issuance of a summons, and specifying the full name and address for said Defendant(s). Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service must be accomplished within one hundred twenty (120) days from the date that the complaint is filed.

**IT IS FURTHER ORDERED** that upon the filing of the complaint, Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon the attorney(s), a copy of every pleading, motion or other document submitted for consideration by the Court. Plaintiff shall include with the original paper submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to the Defendants or counsel for the Defendants. The Court may disregard any paper received by a district judge or magistrate judge which has not been filed with the clerk, and any paper received by a district judge or magistrate judge or the clerk which fails to include a certificate of service.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (#26) is **denied**.

DATED this 6th day of March, 2012.

**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**